UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff, | ) ) ) | |
| vs. | ) ) | No.   19-CR-20060 |
| JEFFREY M. WEST, | ) ) ) | |
| Defendant. | ) | |

**MOTION FOR RECONSIDERATION OF DETENTION ORDER**

Defendant Jeffrey West, through his attorney, Assistant Federal Public Defender Elisabeth Pollock, and pursuant to Bail Reform Act, 18 U.S.C. § 3142, and this Court's Amended General Orders 20-01, 20-02, and 20-03, respectfully moves this Court to release him to a home detention bond pending resolution of this case. Mr. West proposes to await the resolution of his case on home detention with his wife, Mary West, in Mattoon, Illinois.

At a detention hearing on September 13, 2019, this Court held a detention hearing pursuant to 18 U.S.C. § 3142(f) and detained Mr. West pending trial. He has been held at Macon County Jail since that time. Mr. West requests reconsideration of his detention because the COVID-19 pandemic puts him at particular and serious threat to his health, given his personal medical conditions, and because he is not receiving any medical attention for his brain tumor at Macon County Jail.

## I. Introduction

Mr. West is charged with one count of possession of child pornography in violation of 18 U.S.C. § 2252A(a)(5)(B) and (b)(2) and two counts of exploitation of a minor in violation of 18 U.S.C. § 2251(a). (R. 13) Mr. West is at high risk for developing serious complications from COVID-19. He suffers from several medical conditions, specifically right acoustic neuroma, hypertension, neuropathy, and depression. The CDC lists hypertension as presenting increased risk for serious COVID-19 complications. *See* https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/groups-at-higher-risk.html, accessed 4/30/20.

## II. The COVID-19 Pandemic

This Court is familiar with the COVID-19 pandemic. Over one million Americans now have the disease, and the United States is the world leader in COVID-19 deaths. The World Health Organization classifies COVID-19 as a pandemic. Governor Pritzker has issued a disaster proclamation and the entire state of Illinois is on lockdown. Illinois has over 50,000 confirmed cases of COVID-19, and has suffered 2,125 deaths. *See* https://www.dph.illinois.gov/covid19, accessed 4/30/20. On March 18, 2020, Chief Judge Darrow issued Amended General Order 20-01, acknowledging the significant threat that COVID-19 poses to public health. The list of public acknowledgements that this pandemic is monumental could go on forever.

COVID-19 poses a significant threat to Mr. West due to the aforementioned risk factors that apply to him. The CDC advises that individuals at higher risk of serious

COVID-19 complications take immediate preventative actions, including avoiding crowded areas and staying home as much as possible.

There are currently 110 confirmed cases of COVID-19 in Macon County, along with 11 deaths. *See* https://www.maconcountyhealth.org/, accessed 4/30/20. It is absurd to expect that COVID-19 will not enter the Macon County Jail. At the present time, there are a plethora of news stories about the spread of the disease inside jails and prisons. There are confirmed cases of COVID-19 in the Federal Bureau of Prisons, Cook County Jail, and dozens of IDOC facilities. When it gets to Macon County Jail, and if Mr. West gets it, he will very likely need extraordinary assistance, given his risk factors. That presents an unreasonable risk to Mr. West, the guards who will attend him, the health care workers who will try to save him, and the ordinary citizens who will be competing with Mr. West for access to critical medical equipment.

**III.   Conditions of Confinement and Spread of COVID-19**

Communal living conditions of pretrial confinement create the ideal environment for the transmission of contagious disease. *See* Bick, J. "Infection Control in Jails and Prisons," *Clinical Infectious Diseases* 45(8):1047-1055 (2007), available at https://doi.org/10.1086/521910, accessed 4/30/20.  Inmates cycle in and out of detention facilities from all over the state, country, and world. People who work in the facilities leave and return daily. Incarcerated people have poorer health than the general population, and even during non-pandemic-times, medical care in jails is less available than outside.

According to public health experts, incarcerated individuals "are at special risk of infection, given their living situations," and "may also be less able to participate in proactive measures to keep themselves safe;" "infection control is challenging in these settings." *See* "Achieving A Fair And Effective COVID-19 Response: An Open Letter to Vice-President Mike Pence, and Other Federal, State, and Local Leaders from Public Health and Legal Experts in the United States," March 2, 2020, available at https://law.yale.edu/sites/default/files/area/center/ghjp/documents/final_covid-19_letter_from_public_health_and_legal_experts.pdf, accessed 4/30/20. Outbreaks of the flu regularly occur in jails, and during the H1N1 epidemic in 2009, many jails and prisons dealt with high numbers of cases. *See* Wetsman, N., "Prisons and Jails are Vulnerable to COVID-19 Outbreaks," *The Verge* (Mar. 7, 2020), available at https://www.theverge.com/2020/3/7/21167807/coronavirus-prison-jail-health-outbreak-covid-19-flu-soap, accessed 4/30/20.

The BOP's coronavirus population continues to grow despite their efforts. *See* https://www.bop.gov/coronavirus/, accessed 4/30/20. Illinois' jails have demonstrated that they cannot keep COVID-19 out. For instance, the Illinois Department of Corrections had plans in place to keep it out of their facilities. But the plans failed. As of writing, 155 IDOC inmates and 149 staff members have it. https://www2.illinois.gov/idoc/facilities/Pages/Covid19Response.aspx, last accessed 4/30/20.

While the Macon County Sheriff will try to mitigate the COVID-19 epidemic, just like IDOC and BOP did, it is doubtful that they will be able to keep it out of the jail.

IV.     **Authority to Release Mr. West**

A "judicial officer may, by subsequent order, permit the temporary release of the person, in the custody of a United States marshal or another appropriate person, to the extent that the judicial officer determines such release to be necessary for preparation of the person's defense or for another compelling reason." 18 U.S.C. § 3142(i). The circumstances that existed when Mr. West was originally held in detention have now changed. The COVID-19 pandemic poses a direct threat to his life, not *only* because of his increased vulnerability to serious health issues and even death, but also because Macon County is not capable of treating his existing health conditions.

Since being incarcerated, Mr. West has repeatedly complained about the worsening side effects that have occurred as a result of his brain tumor. Specifically, he is experiencing dizziness, balance problems, and memory loss. Mr. West *was* scheduled for a repeat MRI before he was arrested, but has not yet been able to undergo the necessary procedure to determine if the tumor has grown. According to Macon County's medical records, they do not intend to let him see a doctor until October of 2020.

Mr. West's last MRI occurred in October of 2018. He was supposed to undergo an MRI in October of 2019, but was arrested before it could be scheduled. See Exhibit A – MRI Prescription. As such, no monitoring has been done of his tumor for too long a period of time. In most cases, acoustic neuromas grow slowly, but that rate of growth can increase over time. It is undisputed that if untreated, severe pressure can be put on the brainstem and cerebellum, potentially interfering with vital life-sustaining function.

https://www.anausa.org/learn-about-acoustic-neuroma/what-is-acoustic-neuroma#important-points (last visited 4/30/20).

Mr. West is charged with serious offenses, but he has not yet been convicted of said offenses, which do *not* carry with them the penalty of death. Because Mr. West is one of the vulnerable people at heightened risk of severe complication from COVID-19, and in light of the utterly sub-par medical care he is receiving at Macon County Jail, there are compelling reasons to release him onto home detention pending trial in this cause.

AUSA Elly Peirson objects to this Motion.

WHEREFORE, Defendant respectfully asks the Court to release him on bond with a condition that he await resolution of his case on home detention.

By: /s/ Elisabeth R. Pollock
Assistant Federal Public Defender
300 West Main Street
Urbana, IL 61801
(217) 373-0666
(217) 373-0667 FAX
Elisabeth_Pollock@fd.org

## **CERTIFICATE OF SERVICE**

I hereby certify that on April 30, 2020, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to Assistant United States Attorney Elly Peirson.

          By:    /s/ Elisabeth R. Pollock
                    Assistant Federal Public Defender
                    300 West Main Street
                    Urbana, IL 61801
                    (217) 373-0666
                    (217) 373-0667 FAX
                    Elisabeth_Pollock@fd.org

Name: Jeffrey M West | DOB: 10/2/1967 | MRN: 0322706 | PCP: Jason Jerabek DO, DO

## Upcoming Tests and Procedures

**MRI IAC BILATERAL WITH AND WITHOUT CONTRAST** ordered by Ryan Garrett Porter, MD on 10/9/2018
Expected: 10/9/2018     Expires: 11/9/2019

**COPPER, S** ordered by Rong Chen, MD on 4/10/2019
Expected: 10/10/2019 (approximately)     Expires: 10/10/2020

MyChart® licensed from Epic Systems Corporation © 1999 - 2019

EXHIBIT A